UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62555-STRAUSS

**GLORIA IRIS MORENO TIPPENHAVER,**

    Plaintiff,
v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

    Defendant.
_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 27] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 30]. The Court has reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, Plaintiff's Motion [DE 27] will be **DENIED** and Defendant's Motion [DE 30] will be **GRANTED**.

**BACKGROUND**

**I.    PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits and supplemental security income on August 22, 2019, alleging a disability onset date of July 1, 2018 ("Alleged Onset Date"). Tr. 10, 84, 101, 118, 135, 258-68. Her claims were denied initially and upon reconsideration. Tr. 10, 84, 101, 118, 135. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on August 27, 2020; a vocational expert ("VE") also appeared and provided testimony at the hearing. Tr. 65-83. On September 9, 2020, the ALJ issued his decision, finding that Plaintiff was not disabled under the Social Security Act. Tr. 10-21. On October 16, 2020, the

Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on December 11, 2020, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.  PLAINTIFF'S BACKGROUND & HEARING TESTIMONY

Plaintiff was born in 1963. Tr. 258. She was 56 years old at the time she filed her claims and 57 years old both at the time of her hearing before the ALJ and on the date the ALJ issued his decision. Plaintiff completed 11th grade but did not complete high school or obtain a GED. Tr. 70. In her disability report, Plaintiff alleged that the following medical conditions limited her ability to work: high blood pressure; diabetes; back problem; hip problem; anxiety disorder; depression; vision problems; headaches; insomnia; and hand/wrist/arm problem. Tr. 279. Before Plaintiff ceased working in 2018, she worked for a security company, opening and closing gates, monitoring security and cameras, and roving (patrol). Tr. 70-71. Plaintiff was laid off from that job and testified that she was unable to return to work (apparently her former employer was subsequently in a position to hire or re-hire employees) because she started getting sick and experiencing pains throughout various parts of her body. Tr. 72-73. Plaintiff explained that she cannot lift anything because her shoulders will hurt and that she cannot even twist a bottle. Tr. 75.

The VE testified after Plaintiff. He classified Plaintiff's past relevant work as two positions: (1) security guard/merchant patroller (DOT # 372.667-038); and (2) gate guard (DOT # 372.667-030). Tr. 79. The ALJ then asked the VE whether Plaintiff could perform her past relevant work if subject to certain limitations – the limitations identified in the ALJ's question were consistent with the limitations the ALJ ultimately adopted in Plaintiff's RFC (which is discussed below). *Compare* Tr. 15 *with* Tr. 80. With such limitations, the VE testified Plaintiff could perform both jobs, both as actually performed and as customarily performed. Tr. 80.

## **STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## **DISCUSSION**

### I.     THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical

findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)). *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines.  *See* 20 C.F.R. § 404, subpt. P, app. 2.  The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."  20 C.F.R. §§ 404.1569, 416.969.  The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience.  *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. §§ 404.1569, 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## II.    ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled. Tr. 21. Initially, the ALJ addressed some preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 10-12. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 12. Next, the ALJ found that Plaintiff had the severe impairments of obesity, spine disorders, essential hypertension, and diabetes mellitus. Tr. 12. He also determined that Plaintiff's mental impairments – depressive, bipolar and related disorder – were not severe impairments. Tr. 13. At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 14.

The ALJ next assessed Plaintiff's RFC, determining, "[a]fter careful consideration of the entire record," that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ropes, ladders or scaffolds; frequently climb ramps and stairs; frequently kneeling and crawling; avoid concentrated exposure to noise and hazards including working in high exposed places and proximity to moving vehicles and mechanical parts.

Tr. 15.  According to the ALJ, "[t]he medical evidence of record is void of objective evidence to support a more restrictive residual functional capacity." Tr. 19.  After determining Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing her past relevant work as a security guard/merchant patroller and gate guard (both as actually performed and as generally performed).  Tr. 20-21.  In light of the ALJ's finding that Plaintiff could perform her past relevant work, the ALJ concluded that Plaintiff was not disabled – from the Alleged Onset Date through the date of the ALJ's decision.  Tr. 21.

### III. ANALYSIS

In her Motion, Plaintiff argues that "[t]he ALJ's step two determination is not supported by substantial evidence because [the ALJ] failed to find Plaintiff's shoulder impairment severe and this failure permeated the remainder of [the ALJ's] analysis." Motion at 7.  As discussed herein, Plaintiff has failed to show that remand is warranted.

At step two, an ALJ must "consider the medical severity of [the claimant's] impairment(s)." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019) (citation omitted) (alteration in original).  This step, however, is only a "threshold inquiry." *Id.* at 1265 (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).  "[O]nly claims based on the

most trivial impairments [may] be rejected" at step two. *Id.* (quoting *McDaniel*, 800 F.2d at 1031). Step two simply "'acts as a filter' to weed out claims where there are no severe impairments at all." *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 755 (11th Cir. 2018) (quoting and citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "To show a 'severe' impairment, a claimant must show 'any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities.'" *Id.* (quoting 20 C.F.R. § 404.1520(c)). "An impairment or combination of impairments is not severe if it does not significantly limit [her] physical or mental ability to do basic work activities." *Schink*, 935 F.3d at 1265 (quoting 20 C.F.R. § 404.1522(a)). While a claimant has the burden to establish a severe impairment at step two, it is only a "mild" burden. *Id.*

The ALJ did not err at step two. As noted above, at step two, the ALJ found Plaintiff to have several severe impairments – obesity, spine disorders, essential hypertension, and diabetes mellitus. Tr. 12. He also found Plaintiff's mental impairments to be non-severe. Tr. 13. However, the ALJ did not address (at step two) whether Plaintiff's shoulder impairment was severe (or not severe). But he was not required to do so given that he found Plaintiff to have at least one severe impairment and, consequently, proceeded to the next step of the sequential evaluation. *See Jamison*, 814 F.2d at 588 ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.").[1]

---

[1] *See also Law v. Colvin*, 681 F. App'x 828, 833 (11th Cir. 2017) ("Here the ALJ found Ms. Law had several severe impairments, including osteoarthritis. Because step two requires nothing more, we discern no error." (footnote omitted)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[W]e have recognized that step two requires only a finding of 'at least one' severe impairment to continue on to the later steps. Further, the regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. Here, the ALJ found multiple severe

Even assuming that the ALJ erred at step two – assuming Plaintiff's shoulder impairment is severe and that the ALJ should have identified *all* of Plaintiff's severe impairments at step two – any such error was harmless. That is because the ALJ proceeded past step two and made clear that he considered Plaintiff's shoulder impairment (along with all of the other evidence) when formulating Plaintiff's RFC.[2]

In formulating Plaintiff's RFC, the ALJ made clear that he considered all of the evidence, including Plaintiff's subjective symptoms, the medical opinion evidence, and other evidence. *See*

---

impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below." (internal citations omitted)); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

[2] *See Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 744-45 (11th Cir. 2018); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) ("[A]ny step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) ("Even if the ALJ erred in not indicating whether Flemming's psychotic disorder was a severe impairment, the error was harmless because the ALJ concluded that Flemming had two other severe impairments, thereby satisfying step two."); *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015); *Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914-15 (11th Cir. 2014) ("Although the ALJ found that Mr. Freeman's back pain was not a severe impairment, the record demonstrates that she considered and discussed these symptoms at subsequent steps of the sequential analysis. Accordingly, any error in failing to find that Mr. Freeman's lower back pain was severe was harmless because the symptoms were nonetheless considered in the subsequent steps of the ALJ's analysis."); *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013); *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891-92 (11th Cir. 2013); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (finding that while ALJ erred in determining mental impairments were non-severe at step two, ALJ's error was harmless because ALJ considered the mental impairments and their effect on the claimant's ability to work at later steps); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded Burgin's edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.").

9

Tr. 15-20. The ALJ discussed Plaintiff's function report, noting that Plaintiff reported sharp pain through her body and legs. Tr. 16. He also discussed Plaintiff's pain questionnaire, which alleged how Plaintiff's pain affected her. Tr. 16. Additionally, the ALJ discussed Plaintiff's report of back pain from the disability appeal report, as well as Plaintiff's hearing testimony, including that she suffers from *shoulder pain* and that she is unable to twist a bottle. Tr. 16.

After discussing Plaintiff's complaints, the ALJ discussed the medical evidence of record. Tr. 16-18. In doing so, the ALJ noted that many of Plaintiff's physical examinations revealed normal range of motion, normal gait, normal strength, and other normal findings. Tr. 16-18. But the ALJ also discussed examinations where not all findings were normal, demonstrating that he reviewed all of the medical evidence and did not solely consider evidence that supported his ultimate determination. Tr. 16-18. For instance, the ALJ recognized that Plaintiff complained of shoulder pain at a September 30, 2019 appointment where an examination of Plaintiff's left shoulder revealed decreased range of motion, tenderness, and decreased strength; though, the ALJ also noted that Plaintiff exhibited no bony tenderness or crepitus at that appointment and that her gait was normal. Tr. 17. The ALJ also proceeded to discuss other evidence regarding Plaintiff's left shoulder. Tr. 17-18. After doing so, the ALJ discussed Plaintiff's obesity, expressly stating that he considered it "both alone *and in combination with* her other medically-determinable impairments" in reaching his conclusion. Tr. 18 (emphasis added). The ALJ even found that Plaintiff's weight aggravated Plaintiff's other impairments, Tr. 18, further showing that the ALJ considered the combined effect of Plaintiff's impairments.

Based on his consideration of Plaintiff's complaints and the other evidence, the ALJ found that medical evidence supported the existence of physical impairments that could reasonably cause the types of symptoms Plaintiff claimed to experience, just not to the full extent Plaintiff alleged.

Tr. 18. Therefore, the ALJ found Plaintiff's subjective complaints to only be partially consistent with the evidence. Tr. 18. The ALJ explained, *inter alia*, that treatment had been generally successful in controlling Plaintiff's symptoms. Tr. 18. The ALJ additionally found that the record is void of diagnostic evidence revealing significant abnormalities insofar as Plaintiff's complaints of pain are concerned, and the ALJ noted that Plaintiff has not undergone surgery for her pain. Tr. 18. Moreover, the ALJ found that Plaintiff "has not generally received the type of medical treatment one would expect for an individual experiencing the pain levels described by the claimant." Tr. 18. Thus, the ALJ articulated specific reasons for discounting Plaintiff's subjective complaints, and Plaintiff does not contend that the ALJ erred in his credibility determination or that the ALJ's rationale for discounting Plaintiff's subjective complaints is not supported by substantial evidence.

At any rate, "[i]n light of [Plaintiff's] pain and tenderness," the ALJ limited Plaintiff to light work and included additional limitations in her RFC. Tr. 15, 19. And as discussed above, the ALJ explicitly discussed Plaintiff's complaints of pain, *including shoulder pain*, as well as medical records regarding Plaintiff's shoulder pain. Additionally, after discussing Plaintiff's subjective complaints and the medical evidence of record, the ALJ discussed other evidence such as a third-party function report that Plaintiff's husband completed and statements from third parties. Tr. 19. The ALJ also discussed the opinion evidence of record and evaluated its persuasiveness in accordance with the applicable regulations. Tr. 19-20.

Ultimately, the ALJ's decision makes clear that he considered all of the evidence – including, *inter alia*, evidence regarding Plaintiff's shoulder pain and both positive and negative findings – and Plaintiff's medical condition as a whole in formulating Plaintiff's RFC and in determining that Plaintiff was not disabled. Therefore, even assuming Plaintiff's shoulder

impairment is severe, the absence of an express finding at step two that Plaintiff's shoulder impairment is severe did not "permeate" the remainder of the ALJ's analysis.[3] Rather, the absence of such a finding at step two was either not an error (because the ALJ found at least one severe impairment and proceeded past step two) or was, at worst, harmless error (because the ALJ considered all of Plaintiff's impairments and all of the evidence when assessing Plaintiff's RFC). *See supra* notes 1-3 (collecting cases).

In her Motion, Plaintiff attempts to refute Defendant's harmless error argument by relying on the following language from a district court case (from another district located in this circuit):

> There is, however, no bright line rule that all errors at step 2 are harmless when the ALJ moves beyond step 2. Courts have specifically determined that an error at step two does not necessarily constitute harmless error. . . . Instead, courts examine whether the error at step 2 infected another portion of the evaluation process.

*Newton v. Astrue*, No. 1:06-CV-1542-AJB, 2008 WL 915923, at *10 (N.D. Ga. Apr. 1, 2008) (internal citations omitted). It is true that an error at step two may lead to a prejudicial error at a

---

[3] *Cf. Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) ("Ball's argument that the purported error [at step two] affected the ALJ's [RFC] analysis in step four fails because the ALJ considered all of Ball's symptoms and impairments . . ., her medical records and testimony, and all opinion evidence . . . in determining her [RFC]."); *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492-93 (11th Cir. 2016) ("[E]ven if Medina's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were severe impairments, allowing him to move onto step three of the test. . . . Medina appears to argue that the purported error at step two affected the ALJ's analysis at step four because the ALJ failed to consider the combined effect of her severe and non-severe impairments in determining whether she was capable of performing her past work. But the ALJ stated that he had considered all of Medina's symptoms and all opinion evidence, and his ruling included a discussion of the degree of limitation caused by Medina's depression, her subjective allegations of pain, and her mobility limitations, in assessing her [RFC]." (internal citations omitted)); *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014) ("Likewise, in determining Mr. Griffin's [RFC], the ALJ expressly acknowledged that Mr. Griffin's statements regarding the limiting effects of his impairments were not credible. The record demonstrates that, even if the ALJ should have found that Mr. Griffin's tinnitus was a severe impairment, the ALJ fulfilled his responsibility to consider Mr. Griffin's tinnitus in the remaining steps of his disability analysis. Thus, any error that the ALJ made in failing to find that Mr. Griffin's tinnitus was a severe impairment was harmless." (internal citations omitted)).

12

later step (for instance, if an ALJ does not consider one of a plaintiff's medically-determinable impairments at any step). However, *Newton* helps illustrate why no such prejudicial error occurred here. In *Newton*, the court found harmful error because the ALJ failed to consider the plaintiff's wrist cyst and trigger finger at step two *and, significantly, gave no indication that he considered those impairments at later steps* (either alone or in combination with other impairments). *See id.* at *10 & n.12. On the contrary, as discussed above, the ALJ here explicitly discussed Plaintiff's shoulder impairment/pain and noted that he considered Plaintiff's impairments in combination when evaluating Plaintiff's RFC. And even though the ALJ discounted Plaintiff's subjective complaints, he nevertheless made clear that he included limitations in Plaintiff's RFC based upon her pain and tenderness. Thus, the Commissioner's decision is due to be affirmed.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 27] is **DENIED** and Defendant's Motion [DE 30] is **GRANTED**. The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 12th day of August 2022.

Jared M. Strauss
United States Magistrate Judge